UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOSE ALVARADO,

                                        Plaintiff,

                                                                                                  9:08-CV-1126
v.                                                                                                (TJM/GHL)

DR. S. RAMINENI, NEW YORK
STATE DEPARTMENT OF
CORRECTIONAL SERVICES,

                                        Defendants.
_____

APPEARANCES:                                                      OF COUNSEL:

JOSE ALVARADO, 06-B-1530
Plaintiff *pro se*
Mid-State Correctional Facility
P.O. Box 2500
Marcy, New York 13403

HON. ANDREW M. CUOMO                          ADRIENNE J. KERWIN, ESQ.
Attorney General for the State of New York
  Counsel for Defendants
The Capitol
Albany, New York 12224

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

      This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Thomas J. McAvoy, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Jose Alvarado alleges that defendants Dr. Ramineni and the New York State Department of Correctional Services ("DOCS") violated his rights under the Eighth Amendment

because they were deliberately indifferent to his serious medical needs. Plaintiff also claims that DOCS violated his rights pursuant to the Americans with Disabilities Act ("ADA") and the Rehabilitation Act.[1] (Dkt. No. 6.) Currently pending before the Court is Defendants' motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 10.) Plaintiff has opposed the motion. (Dkt. Nos. 15-16.) For the reasons that follow, I recommend that Defendants' motion be granted in part and denied in part.

I.      BACKGROUND

Plaintiff claims that while he was an inmate at Fishkill Correctional Facility ("Fishkill"), he underwent a surgical procedure at Mount Vernon Hospital to remove fatty tissue from his abdomen. (Dkt. No. 6 ¶¶9, 10.) At a follow-up appointment, a surgeon at Mount Vernon Hospital observed that not all of the fatty tissue had been removed during Plaintiff's surgery and that Plaintiff was "having a lot of bleeding" as a result. (*Id*. ¶¶11, 17.) Plaintiff claims that the surgeon ordered the surgical removal of the remaining fatty tissue in Plaintiff's abdomen, noting that it could cause "serious health problem[s] to [P]laintiff in the future." (*Id*. ¶18.)

Less than a month later, Plaintiff was transferred to Mid-State Correctional Facility ("Mid-State"). (*Id*. ¶19.) Soon after Plaintiff arrived at Mid-State, Defendant Dr. Ramineni evaluated Plaintiff. (*Id*.) Plaintiff alleges that "Dr. Ramineni claimed after his examination that [P]laintiff was not going to have any further follow up treatment" despite the fact that Plaintiff "informed Dr. Ramineni exactly what was conveyed to him by the specialist at Mount Vernon

---

[1] Pursuant to a Decision and Order of the Court dated February 2, 2009, Plaintiff's claims against Mount Vernon Hospital were dismissed, as were Plaintiff's ADA and Rehabilitation Act claims against Dr. Ramineni. Plaintiff's claim for monetary damages against DOCS pursuant to 42 USC §1983 was also dismissed. (Dkt. No. 7.)

Hospital." (Dkt. No. 6 ¶19.) Plaintiff claims that he informed Dr. Ramineni "'that the fragments/fatty tissue which was found in plaintiff after surgery have to be removed,' because it could cause blood clogs [sic]." (*Id*.) Plaintiff claims that Defendant Ramineni was deliberately indifferent to his serious medical needs because Defendant Ramineni did not follow the recommendations of Plaintiff's prior physician. (*Id*. ¶23.)

Plaintiff also claims that DOCS violated his rights under the ADA and the Rehabilitation Act by (1) failing to order the follow-up surgery; and (2) refusing to transfer Plaintiff to a flat facility when "having to climb up and down stairs has caused great discomfort to [Plaintiff's] lower back and abdomen area." (*Id*. ¶27.)

## II.     LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense ... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown -

3

that the pleader is entitled to relief." *Id.* at 1950 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under [Rule] 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

Where a *pro se* complaint fails to state a cause of action, the court *generally* "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted). Of course, an opportunity to amend is not required where the plaintiff has already amended the complaint. *See Advanced Marine Tech. v. Burnham Sec .,Inc.*, 16 F. Supp. 2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once). In addition, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." *Cuoco*, 222 F.3d at 112 (citation omitted).

### III. ANALYSIS

#### A. Eighth Amendment Claim Against Defendant Ramineni

Plaintiff alleges that Defendant Ramineni violated his Eighth Amendment rights when he failed to order the follow-up treatment recommended by Plaintiff's previous physician. (Dkt. No.

4

6 ¶ 23.)  Defendants argue that Plaintiff's claim should be dismissed because Plaintiff has not alleged facts plausibly suggesting that he had a serious medical need or that Defendant Ramineni was deliberately indifferent to that need.  (Dkt. No. 10-2 at 2-5.)

      1.  <u>Eighth Amendment Standard</u>

      The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishments.  The word "punishment" refers not only to deprivations imposed as a sanction for criminal wrongdoing, but also to deprivations suffered during imprisonment.  *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976).  Punishment is "cruel and unusual" if it involves the unnecessary and wanton infliction of pain or if it is incompatible with "the evolving standards of decency that mark the progress of a maturing society."  *Estelle*, 429 U.S. at 102.  Thus, the Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  In fulfilling this duty, prison officials must ensure, among other things, that inmates receive adequate medical care.  *Farmer*, 511 U.S. at 832 (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

      There are two elements to a prisoner's claim that prison officials violated his Eighth Amendment right to receive medical care: "the plaintiff must show that she or he had a serious medical condition and that it was met with deliberate indifference."  *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) (citation and punctuation omitted).  "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind."  *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).

### 2. Objective Prong

Defendants argue that Plaintiff cannot establish the objective prong of his Eighth Amendment claim against Defendant Ramineni because the alleged fatty tissue in Plaintiff's abdomen is not a serious medical condition for Eighth Amendment purposes. (Dkt. No. 10-2 at 3.)

A "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) (citations omitted), *accord*, *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1996), *cert. denied*, 513 U.S. 1154 (1995); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain. *Chance*, 143 F.3d at 702-03.

Defendants argue that "[t]he alleged presence of fatty tissue in the plaintiff's abdomen that could cause unidentified serious health problems to plaintiff in the future is not a serious medical condition." (Dkt. No. 10-2 at 3.) Plaintiff's allegations, however, are much less vague than Defendants' characterization suggests. Plaintiff alleges that the follow-up examining doctor at Mount Vernon Hospital noted that Plaintiff suffered bleeding and pain in his abdomen *because* of the fatty tissue. (Dkt. No. 6 ¶ 11.) Thus, Plaintiff alleges that the fatty tissue poses serious present negative health impacts for Plaintiff in addition to the threat of future harm.

Accepting the material facts alleged in the amended complaint as true and construing all

reasonable inferences in Plaintiff's favor, Plaintiff has alleged facts plausibly suggesting that he had a serious medical condition. Plaintiff alleges that the fatty tissue remaining in his abdomen was worthy of comment, and indeed that his previous physician had commented on it. Plaintiff alleges that his previous physician concluded that Plaintiff faced future complications and recommended surgery. (Dkt. No. 6 ¶ 11.) Plaintiff has also plausibly suggested the existence of chronic and substantial pain. For example, Plaintiff notes that his wound "will not heal."[2] (*Id.* ¶ 20.)

Moreover, Eighth Amendment liability is not limited to indifference to current problems. Indeed, in the context of denial of medical treatment to inmates, it is well-established that prison officials are liable for health conditions of prisoners that pose a substantial risk of future serious medical problems. *See Helling v. McKinney*, 509 U.S. 25, 34 (1993) (prisoner allowed to prove that exposure to environmental tobacco smoke is an unreasonable danger to his health); *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d. Cir. 1996) (prisoner allowed to prove prison officials' failure to provide him with eye-glasses due to risk of serious injury without them); *Heisler v. Kralik*, 981 F. Supp. 830, 837 (S.D.N.Y. 1997) (existence of substantial risk of serious harm to the plaintiff did not depend upon seriousness of injuries actually received in assault).

Accordingly, Plaintiff has pleaded facts plausibly suggesting that he suffers from a serious medical condition.

---

[2] I note that Plaintiff's original complaint alleged that Plaintiff suffered "bleeding pain and suffering which 'causes me pain every . . . time [I] touch that area below my stomach.'" Plaintiff did not repeat that precise language in his amended complaint, but mentions it in his opposition to the motion to dismiss. (Dkt. No. 16 at 2.)

   3. Subjective Prong

Defendants argue that Plaintiff has not plausibly suggested that Defendant Ramineni was deliberately indifferent because Plaintiff's disagreements with Dr. Ramineni's actions focus only on the "course of treatment selected by Dr. Ramineni." Defendants argue that a disagreement over a course of treatment is not deliberate indifference. (Dkt. No. 10-2 at 4.)

Medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance*, 143 F.3d, 698, 703 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). Thus, to establish deliberate indifference, an inmate must prove that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702-703. The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U.S. 825, 835; *Ross v. Giambruno*, 112 F.3d 505 (2d Cir. 1997). An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-06. Moreover, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment." *Id.* Stated another way, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.; Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation.") However, malpractice that amounts to

culpable recklessness constitutes deliberate indifference.  Accordingly, "a physician may be deliberately indifferent if he or she consciously chooses an easier and less efficacious treatment plan."  *Chance*, 143 F.3d at 703.

Here, Plaintiff's amended complaint sufficiently alleges that Defendant Ramineni was aware of facts from which an inference could be drawn that he had a serious medical need.  Plaintiff alleges that he expressly informed Dr. Ramineni of his condition upon arrival at Mid-State.  Plaintiff claims he told Dr. Ramineni "that the fragments/fatty tissue which was found in [P]laintiff after surgery have to be removed" because it could lead to medical complications including "blood clogs [sic]." (Dkt. No. 6 ¶ 19.)  Plaintiff's allegations, if supported by evidence, could indeed show that Dr. Ramineni was aware of facts from which he could infer there was a substantial risk of serious harm to Plaintiff's health.

Moreover, Plaintiff sufficiently alleges in his amended complaint that Dr. Ramineni was culpably reckless in not ordering the follow-up surgery.  On the record currently before the Court, it appears that Dr. Ramineni simply disregarded Plaintiff's condition, despite Plaintiff's bleeding and the threat of future harm.  Dr. Ramineni may later, at the summary judgment stage, produce evidence that his decision not to order the surgery was based on his medical judgment that the procedure was not necessary, but no such information is currently before the Court.

Defendants rely on *Regina v. Dalsheim*, an unpublished 1979 case.  Defendants argue that the facts of *Regina* are "identical" to the allegations in the present case.  (Dkt. No. 10-2 at 4.)  In *Regina*, a prisoner brought an Eighth Amendment claim against DOCS medical personnel who, he claimed, deviated from the dosage and type of medication prescribed by an outside physician who had regularly treated the plaintiff for serious cardiac issues.  78-CV-1627 (CES), 1979 U.S.

9

Dist. LEXIS 8008 (S.D.N.Y. Dec. 13, 1979). There, the court granted summary judgment because, even viewing the allegations in the light most favorable to the plaintiff, the defendants' decision to use a different type of drug and a different dosage of that drug did not constitute deliberate indifference to the plaintiff's medical needs. *Id.* at * 9. The court held that, at most, such a change in treatment method constituted medical malpractice. *Id.*

This case is distinguishable from *Regina* for two reasons. First, the defendants in *Regina* did not disregard the plaintiff's condition. Rather, they simply administered different medications and dosages than recommended by the plaintiff's previous physician. Here, the record presently before the Court does not indicate that Defendant Ramineni took any action at all. Second, the *Regina* court indicated that there was evidence before it suggesting that the defendants' actions were within "the realm of acceptable medical judgment." *Regina* at *10. Here, there is no such evidence before the Court.

Therefore, Plaintiff has pleaded facts plausibly suggesting that Defendant Ramineni was deliberately indifferent to his serious medical needs and I recommend that the Court deny Defendants' motion to dismiss the claim.

**B. ADA and Rehabilitation Act Claim Against DOCS**

Plaintiff claims that DOCS violated his rights under the ADA and Rehabilitation Acts when (1) it failed to order follow-up surgery; and (2) denied Plaintiff a transfer to a flat facility despite the lower back and abdominal discomfort he experienced when forced to climb stairs at Mid-State. (Dkt. No. 6 ¶ 27.)

Title II of the ADA applies to state inmates. *Pennsylvania Dep't of Corr. v. Yeskey,* 524 U.S. 206, 209-10 (1998); *Beckford v. Portuondo,* 151 F. Supp. 2d 204, 220 (N.D.N.Y. 2001).

Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities or a public entity, or be subjected to discrimination by such entity." *Winkour v. Office of Court Admin*, 190 F. Supp. 2d 444, 448 (E.D.N.Y. 2002) (quoting 42 U.S.C. § 12132).  To state a viable claim under the ADA, a state inmate must establish that "(1) he or she is a 'qualified individual with a disability'; (2) he or she is being excluded from participation in, or being denied the benefits of some service, program, or activity by reason of his or her disability; and (3) [the facility that] provides the service, program or activity is a public entity." *Clarkson v. Coughlin*, 898 F. Supp. 1019, 1037 (S.D.N.Y. 1995).  The requirements to stating a claim under the ADA correspond to the requirements for claims brought pursuant to the Rehabilitation Act. *Id*. at 1037-38.

       1.     <u>Follow-Up Surgery</u>

Plaintiff alleges that DOCS violated his rights under the ADA and the Rehabilitation Act when it failed to order follow-up surgery.  (Dkt. No. 6 ¶ 27.)

Defendants rely on *Atkins v. County of Orange* for the proposition that Plaintiff's allegations merely challenge the adequacy of medical care provided to him and are not sufficient to state a claim under the ADA and Rehabilitation Acts.  (Dkt. No. 10-12 at 7.)  In *Atkins*, mentally ill county jail inmates brought a claim against the county alleging degrading treatment. 251 F. Supp. 2d 1225, 1232 (S.D.N.Y. 2003.)  The court held that allegations merely challenging the adequacy of medical care provided do not state a claim of disability discrimination.  *Id.*

Here, Plaintiff's ADA and Rehabilitation Act claims regarding DOCS' failure to order follow-up surgery are virtually indistinguishable from the claims in *Atkins*.  Although, as

11

discussed above, Plaintiff has stated an Eighth Amendment claim against Defendant Ramineni, his allegations are insufficient to raise an ADA or Rehabilitation Act claim. Therefore, I recommend that the Court grant Defendants' motion to dismiss this claim.

### 2. Denial of Transfer to a Flat Facility

Plaintiff alleges that DOCS violated his rights under the ADA and the Rehabilitation Act by failing to transfer him to a flat facility despite the fact that he experienced lower back and abdominal discomfort when he was forced to climb stairs.

As discussed above, a plaintiff claiming a violation of the ADA or the Rehabilitation Act must plead facts plausibly suggesting that he or she is being excluded from participation in, or being denied the benefits of, some service, program or activity by reason of his or her disability. Here, Plaintiff has not alleged that the discomfort he experiences climbing stairs has, in any way, prevented him from participating in or receiving the benefits of any service, program, or activity. Therefore, I recommend that the Court grant Defendants' motion and dismiss this claim without prejudice to Plaintiff amending his complaint to allege that he was prevented from participating or receiving the benefits of a service, program, or activity.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 10-2) be **GRANTED** in part and **DENIED** in part**.** It is recommended that Plaintiff's ADA and Rehabilitation Act claims against DOCS be dismissed without prejudice to Plaintiff amending his claim regarding the failure to transfer him to a flat facility and that Defendants

Ramineni and DOCS[3] be directed to answer Plaintiff's Eighth Amendment claim.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).


Dated: March 15, 2010
       Syracuse, New York

                                           George H. Lowe
                                           United States Magistrate Judge

---

[3] Although the Court dismissed Plaintiff's §1983 claims for money damages against DOCS, Plaintiff's § 1983 claim for injunctive or declaratory relief against DOCS remains pending.  (Dkt. No. 7 at 2-3.)  Defendants did not directly address this claim in their motion to dismiss.