UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOSE ALVARADO,

                              Plaintiff,
                                                    9:08-CV-1126
v.                                                  (TJM/GHL)

DR. S. RAMINENI, NEW YORK
STATE DEPARTMENT OF
CORRECTIONAL SERVICES,

                              Defendants.
_____

APPEARANCES:                              OF COUNSEL:

JOSE ALVARADO
Plaintiff *pro se*
30 Resolute Circle
Apt. # 308B
Rochester, NY 14621

HON. ERIC T. SCHNEIDERMAN                  ADRIENNE J. KERWIN, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, NY 12224

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Thomas J. McAvoy,

Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

Plaintiff commenced this action on October 21, 2008, by filing a complaint with attached

exhibits.  (Dkt. No. 1.)  An amended complaint was filed on November 21, 2008, asserting

claims against Dr. Ramineni, the New York State Department of Corrections and Community

Supervision[1] ("DOCCS"), and Mount Vernon Hospital for violations of the Eighth Amendment,

the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act.  (Dkt. No. 6.)  By an

initial order of the Court dated February 2, 2009, the claim against Mount Vernon Hospital was

dismissed, the ADA and Rehabilitation Act claims against Dr. Ramineni were dismissed, and the

§ 1983 claim against the DOCCS for monetary damages was dismissed.  (Dkt. No. 7.)

Defendants subsequently filed a motion to dismiss, seeking dismissal of the complaint in

its entirety.  (Dkt. No. 10.)  By Order of the Court entered July 22, 2010, the Hon. Thomas J.

McAvoy adopted the Report and Recommendation of the undersigned and dismissed the ADA

and Rehabilitation Claims against the DOCCS.  (Dkt. No. 21.)  The only claims remaining are

the Eighth Amendment claims asserted pursuant to 42 U.S.C. § 1983 against Defendants Dr.

Ramineni and the DOCCS.[2]

Currently pending before the Court is Defendants' motion for summary judgment

pursuant to Federal Rule of Civil Procedure 56.  (Dkt. No. 31.)  Plaintiff filed a letter in response

to the motion. (Dkt. No. 36.)  Defendants did not submit a reply.  For the reasons that follow, I

recommend that Defendants' motion be granted.

## I.    Legal Standard Governing Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the

---

[1]This Defendant was listed as "New York State Department of Correctional Services" in the Amended Complaint.  (Dkt. No. 6.)

[2]As noted in the Court's Order of February 2, 2009 (Dkt. No. 7), and the undersigned's Report-Recommendation on Defendants' motion to dismiss (Dkt. No. 17), the pending § 1983 claim against the DOCCS is solely for injunctive and/or declaratory relief.

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists.  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist.  *Salahuddin*, 467 F.3d at 272-73.  The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).  Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material[3] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Major League Baseball Props., Inc. v. Salvino*, Inc., 542 F.3d 290, 309 (2d Cir. 2008).

Plaintiff filed a letter in response to this motion.  (Dkt. No. 36.)  The letter states, in essence, that Plaintiff was unable to obtain assistance with this motion, and that the Court has all of his evidence.[4]  *Id.* at 1.  Although filed as a response, the letter contains no opposition to Defendants' arguments, nor does it controvert any assertions of fact made by Defendants; as

---

[3]A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson*, 477 U.S. at 248.

[4]Plaintiff also states that he does not object to Defendants' request for a two week extension.  (Dkt. No. 36 at 1.)  The Court assumes that this refers to Defendants' request for a two week extension for filing this motion, which was made on February 16, 2011, and was granted by the Court on February 17, 2011.  (Dkt. Nos. 29-30.)

such, this motion will be treated as unopposed.

When a plaintiff has failed to respond to a defendant's motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, practically speaking, the Court must (1) determine what material facts, if any, are *undisputed* in the record presented on the defendants' motion, and (2) assure itself that, based on those *undisputed* material facts, the law indeed warrants judgment for the defendants. *See id.* ("Such a motion may properly be granted only if the facts as to which there is no genuine dispute show that . . . the moving party is entitled to a judgment as a matter of law.") (internal quotation marks and citation omitted) Where a plaintiff has failed to properly respond[5] to a defendant's Statement of Material Facts (a/k/a its "Rule 7.1 Statement"), the facts as set forth in that Rule 7.1 Statement will be accepted as true[6] to the extent that (1) those facts are supported by the evidence in the record,[7] and (2) the non-moving party, if he is proceeding *pro se*, has been specifically

---

[5]*See* N.D.N.Y. L.R. 7.1(a)(3) ("The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises.").

[6]*See* N.D.N.Y. L.R. 7.1(a)(3) ("<u>The Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert.</u>") (emphasis in original).

[7]*See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) ("[W]here the non-movant party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. . . . If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented. . . . [I]n

4

advised of the potential consequences of failing to respond to the movant's motion for summary judgment.  *See Champion,* 76 F.3d at 486; *cf.* N.D.N.Y. L.R. 56.2 (imposing on movant duty to provide such notice to *pro se* opponent).  The Court notes that Defendants provided Plaintiff with this District's "Notification of the Consequences of Failing to Respond to a Summary Judgment Motion."  (Dkt. No. 31-1.)

Where a non-movant fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute. *See Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) ("We agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.")  This is because even *pro se* plaintiffs must obey the Court's procedural rules.  *See McNeil v. United States,* 508 U.S. 106, 113 (1993).  Although not obligated to do so, this Court elects to conduct a review of the entire record.

Where, as here, the Court chooses to conduct an independent review of the record on an unopposed motion for summary judgment, any verified complaint filed by the plaintiff should be treated as an affidavit.  *See Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d. Cir. 2004) ("[A] verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment."); *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (holding that plaintiff "was entitled to rely on [his verified amended complaint] in opposing summary judgment");

---

determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 Statement.  It must be satisfied that the citation to evidence in the record supports the assertion.") (internal quotation marks and citations omitted).

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit for summary judgment purposes[.]").

To be sufficient to create a factual issue for purposes of a summary judgment motion, an affidavit (or verified complaint) must, among other things, be based "on personal knowledge." Fed. R. Civ. P. 56(c)(4) ("An affidavit used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). An affidavit (or verified complaint) is not based on personal knowledge if, for example, it is based on mere "information and belief" or hearsay. *See Patterson*, 375 F.3d at 219; *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988); *Applegate v. Top Assocs., Inc.*, 425 F.2d 92, 97 (2d Cir. 1970) (rejecting affidavit made on "suspicion . . . rumor and hearsay"); *Spence v. Maryland Cas. Co.*, 803 F. Supp. 649, 664 (W.D.N.Y. 1992) (rejecting affidavit made on "secondhand information and hearsay"), *aff'd*, 995 F. 2d 1147 (2d Cir. 1993).

In addition, such an affidavit (or verified complaint) must not be conclusory. *See Patterson*, 375 F.3d at 219; *Applegate*, 425 F.2d at 97. An affidavit is conclusory if, for example, its assertions lack any supporting evidence or are too general. *See*, *e.g.*, *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999) ("Statements [for example, those made in affidavits, deposition testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment."); *West-Fair Elec. Contractors v. Aetna Cas. & Sur. Co.*, 78 F.3d 61, 63 (2d Cir. 1996); *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir. 1985); *Applegate*, 425 F.2d at 97. Finally, even where an affidavit (or verified complaint) is nonconclusory, it may be insufficient to create a factual issue

6

where it possesses the following two characteristics: (1) it constitutes almost the sole or exclusive basis for a disputed issue of fact in the case (or, expressed differently, it is largely unsubstantiated by any other direct evidence); and (2) it is so lacking in credibility that, even after drawing all inferences in the light most favorable to the non-movant, no reasonable jury could find for the non-movant because the testimony is incomplete and/or replete with inconsistencies and improbabilities.  *See, e.g.*, *Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005).

A review of Plaintiff's amended complaint reveals sufficient assertions of fact based upon personal knowledge to allow it to be treated as an affidavit, and this Court will consider it along with all other evidence submitted relative to this motion.

## II.    FACTUAL BACKGROUND

### A.    Claim regarding abdominal mass

While he was an inmate at Fishkill Correctional Facility ("Fishkill"), Plaintiff underwent a surgical procedure at Mount Vernon Hospital to remove fatty tissue from his abdomen.  (Dkt. No. 6 ¶¶ 9, 10.)  At a follow-up appointment, a surgeon at Mount Vernon Hospital observed that not all of the fatty tissue had been removed during Plaintiff's surgery and that Plaintiff was "having a lot of bleeding" as a result.  *Id.* ¶¶ 11, 17.  Plaintiff claims in his amended complaint that the doctor ordered the surgical removal of the remaining fatty tissue in Plaintiff's abdomen, noting that it could cause "serious health problem[s] to [P]laintiff in the future."  *Id.* ¶ 18.

On November 20, 2007, Plaintiff was transferred to Mid-State Correctional Facility ("Mid-State").  *Id.* ¶ 19.  The parties are in dispute as to what happened after Plaintiff's arrival. According to Defendants, upon Plaintiff's arrival at Mid-State he was admitted to the infirmary

7

because he stated he was unable to climb stairs.  (Dkt. 31-5 ¶ 5.)  Dr. Ramineni asserts that he

first met with Plaintiff on November 30, 2007, ten days after his transfer, and Plaintiff

complained about his inability to climb stairs and did not complain of abdominal issues.  (Dkt.

No. 31-5 ¶ 7.)  Dr. Ramineni also asserts that Plaintiff did not mention any issue concerning an

abdominal mass during his stay at the infirmary from November 20, 2007, until November 30,

2007.  *Id*. ¶ 6.

 Plaintiff stated in his amended complaint that within three to four days after his arrival at

Mid-State he informed Dr. Ramineni that a specialist said that more surgery was needed to

remove fatty tissue from his abdomen, and Dr. Ramineni did nothing.  (Dkt. No. 6 ¶ 19.)

Plaintiff testified at his deposition that during his first visit with Dr. Ramineni the doctor told

him "that wasn't nothing." (Dkt. No. 31-3 at 12:1-7.[8])  Plaintiff alleges that "Dr. Ramineni

claimed after his examination that [P]laintiff was not going to have any further follow up

treatment" despite the fact that Plaintiff "informed Dr. Ramineni exactly what was conveyed to

him by the specialist at Mount Vernon Hospital."  (Dkt. No. 6 ¶ 19.)  At his deposition, Plaintiff

testified that when Dr. Ramineni did not do anything to stop the ongoing bleeding at the surgical

site on his abdomen, he filed a grievance, and was sent to a nurse practitioner about two weeks

later.  (Dkt. No. 31-3 at 13:9-14.)  He also alleges in his amended complaint that he filed a

number of grievances relating to his request for follow-up care.  (Dkt. No. 6 ¶ 21.)  There are no

grievances of this type included in the record before the Court.

 Plaintiff testified at his deposition that he insisted the nurse practitioner check into

---

[8]Citations to Plaintiff's deposition use the page numbers of the transcript.  All other page
numbers refer to those assigned by the ECF system.

whether he was supposed to have follow-up treatment, and when she found out that he was, he was sent to Warsaw Hospital.  (Dkt. No. 31-3 at 13:15-14:4.)  Plaintiff testified that he went to Warsaw Hospital twice in January or February 2008, once for X-rays, and once to have fluid removed from his abdomen.  (Dkt. No. 31-3 at 16:9-18:2.)  On his second visit, they informed him that the fatty tissue would go away with time.  (Dkt. No. 31-3 at 17:14-19.)  According to Defendants' Statement Pursuant to Rule 7.1(a)(3), Plaintiff was seen by an outside specialist, Dr. Richard Wells, in March and April 2008, and May 2009.  He evaluated Plaintiff and determined there were no abnormalities within his abdomen and that further treatment was not needed.  (Dkt. No. 31-5 ¶¶ 15-18.)  It is unclear from the record whether the visits to Dr. Wells described by Defendants and the visits to Warsaw Hospital described by Plaintiff are the same events.

Plaintiff saw Dr. Ramineni three to four weeks after his second appointment at Warsaw, and Dr. Ramineni told him that he was not going to get any further treatment for his abdomen. (Dkt. No. 31-3 at 18:9-15.)  Plaintiff stated at his deposition that he was at sick call almost every week due to the bleeding on his abdomen.  (Dkt. No. 31-5 at 14:6-16 and 18:19-19:11.)  Plaintiff testified that he continued to complain about it to Dr. Ramineni up until his release from Mid-State in May 2010.  (Dkt. 31-3 at 20:10-12.)

In contrast, Dr. Ramineni states that after the November 30, 2007, visit with Plaintiff, he only saw him four more times, and only one of those times concerned the bleeding on his abdomen.  (Dkt. No. 31-4 ¶¶ 8-11.)  In Dr. Ramineni's professional opinion, the abdominal mass did not need to be surgically removed.  *Id*. ¶ 18.

Plaintiff was released on May 15, 2010, and is no longer in DOCCS custody.  (Dkt. No. 31-3 at 4:9-10.)  On September 19, 2010, he had surgery to remove the abdominal mass.  (Dkt.

No. 31-3 at 40:6-14.)

**B.     Failure to address Plaintiff's alleged disability**

Plaintiff's other claim centers around the failure of Defendants to transfer him to a flat

facility or to give him a no-stairs permit, and the deprivation of his cane.  (Dkt. No. 6 ¶¶ 27-29.)

Plaintiff was in a motor vehicle accident in June 2001 and was eventually determined to be fully

disabled by the Social Security Administration.  (Dkt. No. 1-4 at 13-21.[9])  Plaintiff was "forced"

to climb stairs while at Fishkill Correctional Facility, and "was doing stairs almost every day."

(Dkt. No. 31-3 at 25:7-8 and 26:23-25.)  Plaintiff testified at his deposition that climbing stairs

was difficult for him because of abdominal pain from the surgery, and back and neck pain

resulting from the automobile accident.  (Dkt. No. 31-3 at 27:9-18.)  While at Fishkill, Plaintiff

was under the impression that he was going to be transferred to a facility where he would not

have to climb stairs.  (Dkt. No. 31-3 at 25:9-23.)  He was transferred from Fishkill to Mid-State,

which does have stairs.  *Id.*

When Plaintiff arrived at Mid-State, Defendants admitted him to the infirmary because he

stated he was unable to climb stairs.  (Dkt. No. 32 at 11.)  Plaintiff testified at his deposition that

he requested a no-stairs permit upon his arrival at Mid-State.  (Dkt. No. 31-3 at 27:19-23.)  His

initial request was denied.  (Dkt. No. 31-3 at 28:2-13.)  According to Plaintiff, after a "couple of

weeks or a couple of months" the nurse practitioner assigned him to the first floor but he still

climbed stairs to attend his program.  (Dkt. No. 31-3 at 29:8-17.)  Plaintiff testified at his

deposition that there was a time when he was removed from his program due to his inability to

_____

[9]The documentation attached to the original complaint in this action was incorporated
into the amended complaint by reference.  (Dkt. No. 6 ¶ 21.)

climb stairs; however, he "tried to go back" to the program because he liked it, and he was put

back in the program on the second floor.  (Dkt. No. 31-3 at 31:18-23.)  Plaintiff claims he then

requested a cane to assist him in getting up and down the stairs to attend his program.  (Dkt. No.

31-3 at 31:18-23.)  From the time he finished his program in September 2009 until his release in

May 2010, Plaintiff was not required to climb any stairs.  (Dkt. No. 31-3 at 35:7-10.)

As of 2008, Plaintiff had been using a cane for seven years.  (Dkt. No. 31-3 at 73-74.)

His cane permit was renewed on January 18, 2008, with the language "to use as needed."  (Dkt.

No. 31-3 at 78.)  On January 24, 2008, Plaintiff was observed walking without a cane between

buildings with a steady gait, and his cane was discontinued. (Dkt. No. 32 at 66.)  The cane was

reissued on February 4, 2008, for use "as needed."  (Dkt. No. 32 at 65.)  On February 8, 2008,

Plaintiff was evaluated by Dr. Ramineni who noted that Plaintiff had been observed by nurses

walking briskly without the cane, and the cane was again discontinued.  (Dkt. No. 32 at 65.)

### C.     Grievances

There are three grievances filed by Plaintiff that were submitted as part of the record.  The

first, filed December 21, 2007, complained that he was denied medical permits and denied

medications.  (Dkt. No. 31-3 at 64-70.)  The second, filed February 12, 2008, grieved the fact that

his cane had been discontinued.  (Dkt. No. 31-3 at 72-78.)  The third, filed July 28, 2008,

complained about the behavior of a nurse and difficulties he had encountered in getting

replacement eyeglasses.  (Dkt. No. 31-3 at 83-96.)  These three grievances were appealed up to

the Central Office Review Committee ("CORC").  (Dkt. No. 31-3 at 64, 72, 83.)  Nowhere in the

record is there any grievance, even an initial one, relating to Plaintiff's allegations about the lack

11

of follow-up care on his abdominal surgery.[10]  There is also no such grievance included on the

list of CORC appeals supplied by Defendants.  (Dkt. No. 31-3 at 62.)[11]

## III.  ANALYSIS

### A.  Eighth Amendment claims against Defendant DOCCS

After the Court's Orders of February 2, 2009, and July 22, 2010, the only claims

remaining against DOCCS are Plaintiff's Eighth Amendment claims for injunctive and

declaratory relief.  (Dkt. Nos. 6, 7, 17, and 21.)  Plaintiff was released from DOCCS custody on

May 15, 2010.  (Dkt. No. 31-3 at 4:9-10.)

A prisoner's claims for declaratory and injunctive relief against a facility generally

_____

[10]In one of the grievances, Plaintiff complains that Dr. Ramineni "will not review his outside medical records." (Dkt. No. 31-3 at 65.)  However, in his appeal of this grievance to the CORC, this complaint seems to relate to his disability claims, and not the lack of follow-up care on his surgery.  (Dkt. No. 31-3 at 66.)

[11]Defendants' motion for summary judgment is supported by prison records, including grievance records, medical records, and a purported printed list from the CORC.  (Dkt. Nos. 31 and 32.)  Motions for summary judgment must be supported by admissible evidence. _Major League Baseball Properties, Inc. v. Salvino_, 542 F.3d 290, 309 (2d Cir. 2008).  Hearsay evidence is not admissible unless it falls within an exception to the hearsay rule.  Fed. R. Evid. 802.  Medical and prison grievance records, although hearsay, may be admissible under the business records exception to the hearsay rule.  That exception renders admissible records of "acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge" but only if such records are "kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation."  Facts supporting admissibility must be supplied "by the testimony of the custodian or other qualified witness or by certification" that complies with Federal Rule of Evidence 902.  Fed. R. Evid. 803(6).  Here, none of the records are supported by any custodial affidavit and have not been certified. Therefore, the records are not technically admissible.  _See Cummings v. Roberts_, 628 F.2d 1065, 1068 (8th Cir. 1980).  I have considered them as part of my independent review of the record, however, because Plaintiff does not dispute any of the submissions and indeed stated in his response to this motion that the Court has "all his evidence."  (Dkt. No. 36.)  I caution defense counsel that medical and grievance records should, in the future, be properly authenticated and accompanied by an affidavit or certification that complies with Rule 803.

become moot if the plaintiff is transferred. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir.

2006).  The same is true if a plaintiff is released from custody altogether.  *See Muhammad v. City*

*of New York Dep't. of Corr.*, 126 F.3d 119, 123 (2d Cir. 1997).  As Plaintiff is no longer in

custody, I recommend that his remaining claims against the DOCCS be dismissed.[12]

**B.   Eighth Amendment claim against Dr. Ramineni for lack of follow-up treatment**

Plaintiff alleged in his amended complaint that Dr. Ramineni violated his Eighth

Amendment rights when he failed to order the follow-up treatment recommended by Plaintiff's

previous physician.  (Dkt. No. 6 ¶ 23.)  Defendants argue that Plaintiff's claim should be

dismissed because Plaintiff failed to exhaust his administrative remedies regarding this claim.

(Dkt. No. 31-6 at 4-6.)  Defendants are correct.

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with

respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or

other correctional facility until such administrative remedies as are available are exhausted."  42

U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about

prison life, whether they involve general circumstances or particular episodes, and whether they

allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  In

order to properly exhaust administrative remedies under the PLRA, inmates are required to

--------

[12]Even if Plaintiff was still in custody, the § 1983 claim against DOCCS would still be
dismissed.  It is well-settled that "neither a State nor its officials acting in their official capacities
are 'persons' under § 1983."  *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 71 (1989).
This limitation on § 1983 extends to governmental entities that are "arms of the state."  *Id.* at 70.
The DOCCS is unquestionably an "arm of the state."  *See Hale v. Arizona*, 993 F.2d 1387, 1399
(9th Cir. 1993).  A state and its agencies are not subject to suit under § 1983 because they are not
"persons."  *Harris v. Dep't. of Health*, 202 F. Supp. 2d 143, 178 (S.D.N.Y. 2002).  As a result,
Plaintiff cannot maintain a § 1983 claim against the DOCCS.

complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined. *Jones v. Bock*, 549 U.S. 199, 218 (2007). In New York state prisons, the DOCCS has a well-established three-step inmate grievance program. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.7 (2010).

Generally, the DOCCS Inmate Grievance Program ("IGP") involves the following procedure for the filing of grievances. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(a) (2010). A representative of the facility's inmate grievance resolution committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id.* at (b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance, and issues a written decision within two working days of the conclusion of the hearing. *Id.* at (b)(2).

Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision. If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. Grievances regarding DOCCS-wide policy issues are forwarded directly to the CORC for a decision under the process applicable to the third step. *Id.* at (c).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id.* at (d).

If a prisoner has failed to properly follow each of the applicable steps prior to

commencing litigation, he has failed to exhaust his administrative remedies. *Woodford v. Ngo*, 548 U.S. 81 (2006).

Plaintiff stated in his amended complaint that he filed "a number of grievances" regarding the failure of Dr. Ramineni to order him to have subsequent surgery. (Dkt. No. 6 ¶ 21.) There is nothing in the record to support Plaintiff's claims that he filed any grievance complaining that he did not receive proper follow-up treatment after his surgery, and Plaintiff has informed the Court that it has "all his evidence." (Dkt. No. 36.) Defendants submitted a list of all the CORC appeals filed by Plaintiff and there is no indication that this particular issue was ever before the CORC. (Dkt. No. 31-3 at 62.) Therefore, I conclude that Plaintiff has not exhausted his administrative remedies as required by the PLRA.

Plaintiff's failure to exhaust, however, does not end the analysis. The Second Circuit has held that a three-part inquiry is appropriate where a prisoner has failed to exhaust his available administrative remedies. *Hemphill v. New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004).[13] First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill*, 380 F.3d at 686 (citation omitted). Second, if those remedies were available, "the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* (citations omitted). Third, if the remedies were available and some of the

---

[13]The Second Circuit has not yet decided whether the *Hemphill* rule has survived the Supreme Court's decision in *Woodford*, 548 U.S. 81. *Chavis v. Goord*, No. 07-4787-pr, 2009 U.S. App. LEXIS 13681, at *4, 2009 WL 1803454, at *1 (2d Cir. June 25, 2009).

defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* (citations and internal quotations omitted).

Here, as discussed above, an administrative remedy was available to Plaintiff. Defendants preserved the exhaustion defense by asserting it in their answer to the amended complaint.  (Dkt. No. 22 ¶ 11.)  Nothing in the record before the Court on this motion for summary judgment indicates that Defendants should be estopped from asserting the defense; there are also no special circumstances justifying Plaintiff's failure to exhaust his administrative remedies.  The list of CORC appeals submitted by Defendants indicate that Plaintiff was aware of the grievance and the appeal processes and, in fact, utilized this procedure as early as 2006. (Dkt. No. 31-3 at 62.)  I find that Plaintiff did not properly exhaust his administrative remedies for his claim about follow-up treatment, and therefore recommend that his Eighth Amendment claim against Dr. Ramineni for lack of follow-up care be dismissed.

### C.      Eighth Amendment claim against Dr. Ramineni for failure to transfer Plaintiff to a flat facility or provide a cane

Although the claims against both Defendants under the ADA and the Rehabilitation Act have been dismissed, the amended complaint also asserts a claim under the Eighth Amendment for lack of medical care because Plaintiff was not transferred to a flat facility and also because he was not provided with a cane.  (Dkt. No. 6 ¶¶ 27-29.)  A review of the grievances initially filed on December 21, 2007, and February 12, 2008, and appealed through the Facility Superintendent and the CORC, satisfies this Court that Plaintiff exhausted his administrative remedies on these

16

issues.  (Dkt. No. 31-3 at 64-81.)

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishments.  The word "punishment" refers not only to deprivations imposed as a sanction for criminal wrongdoing, but also to deprivations suffered during imprisonment.  *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976).  Punishment is "cruel and unusual" if it involves the unnecessary and wanton infliction of pain or if it is incompatible with "the evolving standards of decency that mark the progress of a maturing society."  *Estelle*, 429 U.S. at 102.  Thus, the Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  In fulfilling this duty, prison officials must ensure, among other things, that inmates receive adequate medical care.  *Farmer*, 511 U.S. at 832 (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

There are two elements to a prisoner's claim that prison officials violated his Eighth Amendment right to receive medical care: "the plaintiff must show that she or he had a serious medical condition and that it was met with deliberate indifference."  *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) (citation and punctuation omitted).  "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind."  *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003)

1. <u>Objective prong</u>

A "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain."  *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) (citations omitted), *accord*, *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1996),

17

*cert. denied*, 513 U.S. 1154 (1995); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

Relevant factors to consider when determining whether an alleged medical condition is

sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable

doctor or patient would find important and worthy of comment or treatment; (2) the presence of a

medical condition that significantly affects an individual's daily activities; and (3) the existence

of chronic and substantial pain. *Chance*, 143 F.3d at 702-03.

Plaintiff claims in his amended complaint that having to climb stairs at Mid-State caused

"great discomfort" to his lower back and abdomen.  (Dkt. No. 6 ¶ 27.)  He also claims that he

was denied use of his cane, which would have assisted him in navigating the stairs.  (Dkt. No. 6 ¶

29; Dkt. No. 31-3 at 31:22-23.)  Severe back pain, lasting over a long period of time, has been

found to constitute a serious medical need under the Eighth Amendment. *Dobbin v. Artuz*, 143

F. Supp. 2d 292, 302 (S.D.N.Y. 2001); *Nelson v. Rodas*, No. 01-CV-7887, 2002 U.S. Dist.

LEXIS 17359, at *50, 2002 WL 31075804, at *14 (S.D.N.Y. Sept. 17, 2002).  Plaintiff attached

several pages of his medical records to his initial complaint and incorporated them by reference

into his amended complaint.  (Dkt. No. 6 ¶ 21.)  From these records it is apparent that he saw Dr.

Richard Dobson multiple times to address chronic severe back pain, and was taking several

different pain medications.  (Dkt. No. 1-2.)  Plaintiff complained of back pain several times

during his incarceration at Mid-State, as evidenced by his prison medical records.  (Dkt. No. 32

at 11, 26, 28, 34, 48, 51, 60, 61, and 67.)  Defendants have not raised any arguments as to why

Plaintiff's back pain should not be considered sufficiently serious under the Eighth Amendment,

and the case provided by Defendants involved a plaintiff who sporadically complained of back

pain but refused treatment, which is not the case here. *See Benitez v. Pecenco*, No. 92 Civ. 7670,

18

1995 U.S. Dist. LEXIS 10431, 1995 WL 444352 (S.D.N.Y. July 27, 1995.)[14]  Thus, for purposes

of this motion, I find that there is a triable question of fact concerning the seriousness of

Plaintiff's back injury.

      2.  Subjective prong

      The inquiry does not end with the objective analysis, however.  Plaintiff must still show

that the alleged lack of adequate care amounted to deliberate indifference.  *Chance*, 143 F.3d at

702.

      Medical mistreatment rises to the level of deliberate indifference only when it "involves

culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a

substantial risk of serious harm.'" *Id.*, at 703 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835

(1994)).  Thus, to establish deliberate indifference, an inmate must prove that (1) a prison

medical care provider was aware of facts from which the inference could be drawn that the

inmate had a serious medical need; and (2) the medical care provider actually drew that

inference.  *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702-703. The inmate then must

establish that the provider consciously and intentionally disregarded or ignored that serious

medical need.  *Farmer*, 511 U.S. 825, 835; *Ross v. Giambruno*, 112 F.3d 505 (2d Cir. 1997). An

"inadvertent failure to provide adequate medical care" does not constitute "deliberate

indifference." *Estelle*, 429 U.S. at 105-06.  Moreover, a complaint that a physician has been

negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the

Eighth Amendment." *Id.*  Stated another way, "medical malpractice does not become a

constitutional violation merely because the victim is a prisoner." *Id.; Smith v. Carpenter*, 316

---

[14]A copy of this case was attached to Defendants' motion.  (Dkt. No. 31-7.)

F.3d 178, 184 (2d Cir. 2003) ("Because the Eighth Amendment is not a vehicle for bringing

medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical

care will rise to the level of a constitutional violation.")  However, malpractice that amounts to

culpable recklessness constitutes deliberate indifference.  Accordingly, "a physician may be

deliberately indifferent if he or she consciously chooses an easier and less efficacious treatment

plan." *Chance*, 143 F.3d at 703.

There is nothing in the record to support a finding that Dr. Ramineni was deliberately

indifferent.  Plaintiff testified at his deposition that while he was at Fishkill he climbed stairs

almost daily.  (Dkt. No. 31-3 at 26:23-25.)  Throughout Plaintiff's prison medical records, there

are several notations that Plaintiff was able to ambulate well without a cane.  (Dkt. No. 32 at 26,

34, 48, 60, 65, 66, and 67.)  Dr. Ramineni performed a functional assessment on Plaintiff

specifically regarding his ability to climb stairs and observed he was able to walk briskly and get

on the exam table without difficulty; Dr. Ramineni also reviewed Plaintiff's MRI and concluded

that there was no "significant objective finding to restrict [Plaintiff] from climbing a flight of

stairs [three] times a day."  (Dkt. No. 32 at 38.)  Plaintiff's nurse practitioner also observed no

medical indication for a no-stairs permit or a program excuse. (Dkt. No. 32 at 40.)

Plaintiff has made no connection in his amended complaint, in his deposition, or in any

other part of the record, to support an inference of the culpable state of mind required for

deliberate indifference.  Plaintiff has not established any actual medical need to be transferred to

a flat facility, for a no-stairs permit, and for a cane, especially in light of the regular treatment he

received and the specific evaluations he underwent.  *See Dobbin*, 143 F. Supp. 2d at 302.  Any

allegation that Plaintiff should have been transferred to a flat facility, should have had a no-stairs

permit, and should have had a cane throughout his stay at Mid-State, are at most differences in treating opinions and thus do not give rise to an Eighth Amendment violation.  *See Murray v. Ramineni*, No. 08-CV-809, 2011 U.S. Dist. LEXIS 35734, at *62, 2011 WL 1315777, at *20 (N.D.N.Y. Mar. 3, 2011) (Homer, M.J.) (Report-Recommendation and Order adopted by the Hon. David N. Hurd on April 1, 2011.)  Therefore, I recommend that Plaintiff's Eighth Amendment claims against Dr. Ramineni for failure to transfer Plaintiff to a flat facility, failure to provide Plaintiff with a no-stairs permit, and failure to provide Plaintiff with a cane, be dismissed.[15]

ACCORDINGLY, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 31) be **GRANTED;** and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of *Chavis v. Goord*, No. 07-4787-pr, 2009 U.S. App. LEXIS 13681, 2009 WL 1803454 (2d Cir. June 25, 2009); *Murray v. Ramineni*, No. 08-CV-809, 2011 U.S. Dist. LEXIS 35734, 2011 WL 1315777 (N.D.N.Y. Mar. 3, 2011); and *Nelson v. Rodas*, No. 01-CV-7887, 2002 U.S. Dist. LEXIS 17359, 2002 WL 31075804 (S.D.N.Y. Sept. 17, 2002).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

---

[15]Due to the fact that I am recommending dismissal of all claims against Dr. Ramineni on the merits, the question of whether he is entitled to qualified immunity need not be addressed.

*Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: December 6, 2011
      Syracuse, New York

George H. Lowe
United States Magistrate Judge